IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBALL J. BRADLEY, )<br>)<br>Plaintiff, )<br>)<br>-vs- )<br>) Civil Action No. 07-1347<br>)<br>HERBERT BENNET CONNER, )<br>)<br>Defendant. ) | |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

Plaintiff asserts claims for defamation and false light arising from Defendant's alleged publication of statements on an internet message board. Defendant has moved to dismiss the complaint on the grounds that (1) the claims are barred by the applicable statute of limitations; (2) the statements at issue constitute non-actionable opinion; and (3) Plaintiff has failed to aver necessary elements of a false light action. For the reasons set forth below, I find that Plaintiff's claims are barred by the statute of limitations, and therefore grant Defendant's Motion to Dismiss the Complaint. Because the claims are time-barred, I need not address Defendant's second and third arguments relating to the substance of the claims.

### I. LEGAL STANDARD

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all factual

1

allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff. Haspel v. State Farm Mut. Auto Ins. Co., 2007 WL 2030272, at *1 (3d Cir. July 16, 2007). "In ruling on a motion to dismiss on statute of limitations grounds, the Court may not look beyond the face of the complaint. Thus, 'a 12(b)(6) motion should not be granted on limitations grounds unless the complaint facially shows noncompliance with the limitations period.'" Giusto v. Ashland Chem. Co., 994 F. Supp. 587, 594 (E.D. Pa. 1998) (quoting Clark v. Sears Roebuck & Co., 816 F. Supp. 1064, 1067 (E.D. Pa. 1993)). As the Third Circuit has explained: "We are mindful that the applicability of the statute of limitations usually implicates factual questions as to when plaintiff discovered or should have discovered the elements of the cause of action; accordingly, defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are time-barred." Davis v. Grusemeyer, 996 F.2d 617, 623 n.10 (3d Cir. 1993) (quotations omitted).

## II. ALLEGATIONS OF THE COMPLAINT

Plaintiff is the Chairman, President and Chief Executive Officer of Reunion Industries, Inc. ("Reunion"), having previously held the position of Chief Operating Officer. Plaintiff, with his family, also owns a controlling interest in Reunion. Reunion is a manufacturing conglomerate with various operating divisions. At all times relevant herein, Reunion was publicly traded on the NASDAQ exchange under the ticker "RUN." Defendant is an attorney who represented Reunion, either personally or through the law firms with which he was affiliated, from 1998-2003.

2

The internet service provider Yahoo! maintains a website finance channel which includes the "Yahoo! Finance bulletin board." Each publicly traded company has its own designated bulletin board. Each bulletin board provides its members a forum to post messages over the internet regarding the specific publicly traded company. Anyone with internet access can view the posting on the individual bulletin boards.

According to Plaintiff, beginning in August 2005 and continuing through March 2006, Defendant, using the alias "pun2dex," posted numerous messages on the Yahoo! Finance bulletin board designated for Reunion. Plaintiff alleges that Defendant posted the following statements:

> On August 10, 2005, pun2dex stated: "As badly as this company is run, there is no shutdown. Richard Conway (of Lc Capital Masters) is in and will be heard. The company has fresh cash and is buying raw material. It will show an operating profit this quarter primarily due to the sales in China by its CPI sub. So long as the bond holders sit still, there could be some upside."

> On September 1, 2005: "[Reunion] operates with a lockbox. It has no choice but to pay down the Bank debt. The Bondholders are stuck. The Bank takes all the excess cash and leaves only enough to buy material for production. Leadership is lacking, but well paid anyway. Check the identity of majority ownership in relation to the CEO and COO. I do not know how the outside directors sleep. There is a large lawsuit looming if someone should have the energy to file it."

> On September 20, 2005: "Richard Conway is running Reunion. At last someone with an IQ. He paid hard cash. The banks have been backed off and RUN will report around 20 cents, if it so chooses in October, not from operations, but debt reduction. They can now buy raw steel and make product. The Oneida division will be sold

and the cylinder and pressure vessel business will be advanced. Conway will have a $4.00 stock in 18 months."

On September 21, 2005: "I have followed the company for a very long time and read the filings. The Board is becoming concerned since Worldcom, in light of Sarbox, and well they should. . . .Kimball Bradley [Plaintiff] is still called COO, C E Bradley is still CEO, but the latter is CEO in paycheck only, and will soon be resigning at the request of Mr. Conway. The only way out for [Reunion] is to do what Conway suggests. Look for him to buy the junk bonds, reduce and control the debt and spur the growth of the profitable divisions. Check LC Capital Masters and Lampe, Conway Fund Group. Run (sic) needs management with a higher IQ than club handicap, with Conway, they get one, even if K. Bradley stays in as COO or even moves to CEO. He will not be calling the shots, except on the Golf Course."

On January 1, 2006: ". . .the story is all of failure since the young Bradley took over and will not stop until he is long gone. Until that day, this company and this stock will bounce a little, but is going nowhere."

On January 24, 2006: "If you are intent on paying salaries, you must sell something in the context of this company. Check the President, who is a member of the YPO. That means he was unable to be employed anywhere else, so his father made him president of this company so he could hang out with other young guys who were born on third base and think they hit a triple. This company is going nowhere. The next big thing will be a revolt of the bondholders or the banks. The shareholders will not be happy."

On January 25, 2006: "Our leader will never consider stepping aside to allow someone with the drive and intellect to run the company, so long as he has no other job prospects and strong cash needs. Instead of figuring out a way to make the company profitable, he sells assets to keep his check coming in. Go to GHIN.COM in Pennsylvania for Kimball Bradley and you will quickly see where the energy of management is spent, and only a small fraction of the rounds are posted so as not to upset

his father. What a waste. The bondholders would be well advised to call his bluff, take control and get someone in who will put the company right. There are only a few assets left to sell, and at Kimball's age he will need to sell them all just to pay his caddies."

On February 10, 2006: "The market cap on RUN is $9,500,000.00. Check what the company was worth when currect [sic] management took over. Even at that number you could not sell the stock and hold the current stock price. What a waste. How do those people sleep at night? Subtract the debt from a reasonable enterprise evaluation and you are below zero. A monkey could do better."

On February 22, 2006: "There is a [sic] apparent disconnect between blind optimism and business sense. A manager should get out of his office and go to customers, visit the plants and find new markets, new products and new businesses to bring a company above the profit line. He does not refinance a sea of debt over a five year reign, sell the divisions that earn a profit, add no new ones, shrink the revenue and raise his own salary, while buying a stadium box for his personal use with company funds, leave the office by 3:00 pm every weekday, work no weekends or evenings and pine for a job that makes 'real money.' This guy is rearranging the deckchairs on the Titanic, and only on a part time basis at that, while he works on his golfing handicap. We write in the hope that the board will wakeup and find a real CEO. Will recognize that it has a duty to the shareholders and not to an incompetnat [sic] young boy who cannot find a job on his own. . . .At Worldcom each boardmember was required to pay 20% of his personal net worth to the shareholders because they ignored guys like me. It will happen again."

On March 9, 2006: "This is just more rearranging of the deck chairs on the Titanic. K. Bradley probably thinks he did something meriting a huge bonus or perhaps a pay increase, but look at what has happened since he became COO. Straight down for revenues, profits and share price. I agree he probably can't sleep at night, but he should still put in a full day, although with his ability, the company would do better without him. Still, Dad likes him, so he gets promoted, GO Figure. After all the comments about

> YPO, I did some research and have concluded that they are
> a circle of jerks or a circle jerk. Our Boy fits right in."

Based on these statements, Plaintiff asserts claims under Pennsylvania law for defamation, including defamation per se, and for false light.

### III. THE MOTION TO DISMISS

Defendant moves to dismiss, *inter alia*, on the ground that Plaintiff's claims are barred by the statute of limitations. Pennsylvania has a one-year statute of limitations for defamation claims, including claims for false light. 42 Pa. Cons. Stat. Ann. §5523(1) (West 2007); see also, Smith v. IMG Worldwide, Inc., 437 F. Supp.2d 297, 304 (E.D. Pa. 2006)(plaintiff's defamation claim barred by one-year statute of limitations); Permenter v. Crown Cork & Seal Co., Inc., 38 F. Supp.2d 372, 382-83 (E.D. Pa. 1999) (claim for false light is a claim for invasion of privacy and has a one-year statute of limitations), aff'd, 210 F.3d 358 (3d Cir. 2000). The one-year period is computed from the time the cause of action accrues. Dowling v. Philadelphia Newspapers, Inc., 1995 WL 1315957, at *1 (Pa. Com. Pl. Feb. 6, 1995), aff'd, 665 A.2d 1304 (Pa. Super. Ct. 1995). "Under Pennsylvania law, a cause of action for defamation accrues on the date of publication of the defamatory statements." Easton v. Bristol-Myers Squibb Co., 289 F. Supp.2d 604, 613 (E.D. Pa. 2003). The same accrual rule applies to claims for invasion of privacy. See Bradford v. American Media Operations, Inc., 882 F. Supp. 1508, 1517 (E.D. Pa. 1995).

According to the Complaint, the allegedly defamatory statements were published between August 2005 and March 2006, with the last occurring on March 9, 2006. The Complaint was filed on August 17, 2007. Since the Complaint was filed

6

more than one-year after even the most recent defamatory statement was made, Plaintiff's claims for defamation and false light based on these statements are barred by the statute of limitations.

Plaintiff argues that Pennsylvania employs a 'discovery rule' in defamation actions, and "because of the discovery rule, the date of publication alone is legally irrelevant." Pl. Mem. at 5. According to Plaintiff, the discovery rule tolled the statute of limitations until he discovered through reasonable diligence the identity behind 'pun2dex' on August 17, 2006. Plaintiff purportedly exercised reasonable diligence through hiring a private investigator, instituting a lawsuit against the anonymous 'pun2dex' in order to acquire a subpoena directed to the internet service provider with information on the identity of 'pun2dex,' and instituting this action within one year (to the day) that 'pun2dex' was identified as Defendant herein. Id. at 4.

As an initial matter, Plaintiff's argument relies on allegations not set forth in his Complaint. "In ruling on a motion to dismiss on statute of limitations grounds, the Court may not look beyond the face of the complaint." Giusto, 994 F. Supp. at 594. Accordingly, for purposes of this motion, I cannot consider Plaintiff's allegations, which are not contained in the Complaint, relating to when he discovered the identity of Defendant. See Fralin v. C and D Security, Inc., 2007 WL 1576464, at *4 (E.D. Pa. May 30, 2007) (in analyzing a statute of limitations issue, court must use date set forth in complaint indicating when the defendant refused to accommodate the plaintiff, not the date the plaintiff argues she learned of the

refusal).

In any event, Plaintiff's application of the discovery rule to this action is not supported by Pennsylvania law. The discovery rule provides that "where the existence of the injury is not known to the complaining party and such knowledge cannot be reasonably ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." Smith, 437 F. Supp.2d at 305 (quoting Gatling v. Eaton Corp., 807 A.2d 283, 289 (Pa. Super. 2002)). It was developed 'in an effort to ameliorate the sometimes-harsh effects of the statute [of limitations]." Cathcart v. Keene Indus. Insulation, 471 A.2d 493, 500 (Pa. Super. Ct. 1984). The discovery rule is strictly applied in Pennsylvania. Bradford, 882 F. Supp. at 1519.

State and federal courts in Pennsylvania, applying Pennsylvania law, have expressly rejected application of the discovery rule where a plaintiff merely lacks knowledge as to the defendant's identity. See, e.g., Cathcart, 471 A.2d at 501 ("mere difficulty in identifying defendants was not sufficient to toll the running of the statute of limitations as to those defendants"); Faulls v. Proctor & Gamble Paper Prods. Co., 1993 WL 765822, at *4 (Pa. Com. Pl. Jan. 15, 1993) (rejecting application of the discovery rule to toll the statute of limitations until the plaintiff learned the identities of the individuals who defamed him); Robinson v. Lowe's Home Centers, Inc., 2007 WL 2739187, at *2 (E.D. Pa. Sept. 19, 2007) ("The Pennsylvania Superior court has generally found the discovery rule inapplicable in cases where a plaintiff was aware of an injury and its cause but had not determined the identity of the

defendants within the limitations period)(citations omitted); Debbs v. Thiokol Corp., 1993 WL 190872, at *4 (E.D. Pa. June 4, 1993) ("An allegation of mere difficulty in identifying the defendants will not toll the statute of limitations."); Merry v. Westinghouse Elec. Corp., 684 F. Supp. 852, 855 (M.D. Pa. 1988) (rejecting application of discovery rule). As the district court in Merry explained:

> Nothing in the discovery rule provides for the tolling of the statute until the responsible party is identified. The burden is on the injured party, once he discovers the cause of his injury, to make that determination within the statutory period. An allegation of mere difficulty in identifying defendants [is] not sufficient to toll the running of the statute of limitations.

Merry, 684 F. Supp. at 855 (quoting Cathcart, 471 A.2d at 501).

This case presents an even stronger justification for denying application of the discovery rule. The courts in the above-cited cases all refused to apply the discovery rule where the plaintiffs failed to identify the defendants within the applicable statutes of limitations. Here, by contrast, Plaintiff actually *did* identify Defendant on August 17, 2006, well within the applicable one-year statute of limitations. Inexplicably, however, Plaintiff chose not to commence an action against Defendant within that period. Application of the discovery rule herein would not serve equity, but rather would award Plaintiff for his dilatory conduct.

For the foregoing reasons, the Defendant's Motion to Dismiss is granted.

*****************************

## ORDER OF COURT

AND NOW, this **29th** day of November, 2007, after careful consideration, and for the reasons set forth in the accompanying Opinion, it is Ordered that the Motion to Dismiss [Docket No. [2]] is granted. This case is closed forthwith.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge